In re Estate of Alvina FRECH, Deceased.

Edward E. MURPHY, Jr., Administrator C.T.A., Appellant,

v.

MERCANTILE TRUST COMPANY and James H. Hetzel, Trustees, Respondents.

No. 48374.

Supreme Court of Missouri,

Division No. 1.

June 12, 1961.

Murphy & Kortenhof, St. Louis, Edward W. Fredrickson, St. Louis, for appellant.

Thompson, Mitchell, Douglas & Neill, James M. Douglas, William G. Guerri, W. Stanley Walch, St. Louis, for respondent, Mercantile Trust Co.

Wilbur B. Jones, Martin Schiff, Jr., St. Louis (Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, of counsel), for respondent Hetzel, Trustee.

HOUSER, Commissioner.

This is a proceeding in the probate court to discover assets. § 473.340, RSMo 1959, and V.A.M.S. On February 25, 1959 Edward Murphy, Administrator of the Estate of Alvina Frech, Deceased, filed an affidavit in the Probate Court of the City of St. Louis stating that decedent executed an

indenture of trust on March 15, 1951 naming the corporate predecessor of Mercantile Trust Company, and an individual, as joint trustees of bonds, stocks and moneys (worth $98,000 as of April 20, 1951); that on or about July 9, 1952 decedent revoked said trust; that the trustees still hold, possess and control this property of decedent, which belongs to and is being wrongfully withheld from the estate.

The fact that decedent executed the trust indenture is undisputed. It gave the trustees full power to hold and manage the property, invest and reinvest in their absolute discretion, and required them to pay the net income to settlor Alvina Frech for life and thereafter to Elenore F. Hetzel for life, and then to deliver and convey the trust estate to Ralph Hetzel, whereupon the trust was to terminate. Other provisions were made for the devolution of the property in the event Elenore and Ralph should die before receiving their share of the trust estate. The settlor reserved the right at any time to revoke the trust in its entirety by instrument, in writing, signed by the settlor and delivered to the trustees.

The trustees, after answering the interrogatories, alleged that the indenture of trust had been executed on March 15, 1951 and that assets in excess of $98,000 had been transferred to the trustees as of April 20, 1951. They set out Article 10 of the indenture (the provision prescribing the method by which the indenture could be revoked). Then they alleged that:

"Alvina Frech never at any time during her lifetime delivered any instrument to the Trustees either amending or revoking said Trust, but said Trust remains unrevoked and is and remains a valid, subsisting Trust according to the terms of said Indenture.

"Mercantile Trust Company and James H. Hetzel as Trustees pursuant to said Indenture of Trust, are presently administering said Trust and have been doing so for the more than eight years since its creation and for the more than seven years since July 9, 1952, and in the course of such administration the Trustees have done numerous acts and things and engaged in and performed numerous transactions including the investment and reinvestment of assets of said Trust, and the making of payments therefrom including income payments as provided in said Indenture, all of which acts were done under the authority of and as authorized by said Indenture of Trust, which Indenture was at all times and now is and will remain valid and subsisting according to its terms, and unrevoked, and not subject to attack in this proceeding."

The corporate trustee filed with its answer copies of correspondence between trustees and settlor indicating that the settlor recognized the continued existence of the trust after the date of the alleged revocation.

The probate court overruled motions to dismiss on the ground of lack of jurisdiction; heard the matter on the merits; found that the trustees were not wrongfully withholding assets belonging to the estate and dismissed the citations for concealment of assets. On appeal to the circuit court the trustees renewed their motions to dismiss the proceeding on the ground that the probate court lacked jurisdiction over the subject matter; that the issues are of equity jurisdiction; and that as a result neither the probate court nor the circuit court (a court of derivative jurisdiction) had jurisdiction. The motions were sustained and the cause dismissed for lack of jurisdiction, whereupon the administrator appealed to this Court.

■ We have jurisdiction, since the amount in dispute (the value of the property allegedly wrongfully withheld, In re Clinton's Estate, 223 Mo. 371, 123 S.W. 1) is in excess of $15,000.

Appellant-administrator contends that the pleadings disclose a proper situation for a discovery of assets proceeding, of which

the probate court has exclusive original jurisdiction

Respondents-trustees maintain that neither the probate court nor the circuit court on appeal had any jurisdiction; that the pleadings and record as a whole show conclusively that this proceeding was solely and only an equitable suit to cancel, revoke and set aside the terms of a valid, subsisting express trust under the guise of an attempt to discover assets; that a probate court has no jurisdiction to entertain such a purely equitable proceeding, which is cognizable only in a court of equity jurisdiction.

Appellant-administrator replies that upon revocation of a trust by the settlor equity has no further jurisdiction in the matter; that when a trust is terminated by the exercise of a power of revocation, and where under the terms of the trust nothing remains to do but surrender and physically deliver up the trust property, the trustee is under a duty enforceable in an action at law (and enforceable here by proceeding under § 473.340), to pay the money or transfer the chattels immediately and unconditionally; that the only real dispute is whether settlor revoked the trust on July 9, 1952; that this is a simple fact issue, easily determinable by a court of law, and not requiring the interposition of a court of equity; that the fact that the original securities may have been disposed of and converted into other property or that it will be necessary to have an accounting of the income received and the payments or disbursements made, does not limit the power of the probate court to require the present assets of the trust to be returned to the estate.

A proceeding under § 473.340 for the discovery of assets is an action at law,

Courier v. Scott, Mo.Sup., 336 S.W.2d 375, in which the probate court has exclusive jurisdiction to determine whether there has been any property concealed, embezzled, or wrongfully withheld from an estate, *except in cases of purely equitable cognizance*. State ex rel. Nute v. Bruce, 334 Mo. 1107, 70 S.W.2d 854; State Bank of Willow Springs v. Lillibridge, 316 Mo. 968, 293 S.W. 116; State ex rel. Lamm v. Lamm, Mo.App., 216 S.W. 332. The probate court, however, is a court of limited, statutory jurisdiction, *without power to entertain a suit or proceeding based upon strictly equitable principles*, State ex rel. North St. Louis Trust Co. v. Wolfe, 343 Mo. 580, 122 S.W.2d 909, unless such jurisdiction is expressly conferred by statute or is necessarily incident to the proper exercise of duties directly imposed. Ford, Adm'r v. Talmage, 36 Mo.App. 65, 71. No statute confers upon the probate court jurisdiction over matters pertaining to inter vivos trusts. Jurisdiction over trusts has always been regarded as "one of equity's original and inherent powers." Rawlings v. Rawlings, 332 Mo. 503, 58 S.W.2d 735, 737; State ex rel. and to Use of Clay County State Bank v. Waltner, 346 Mo. 1138, 145 S.W.2d 152, 155. Equity has jurisdiction of all questions relating to the establishment, enforcement, protection, preservation,[1] and the termination and revocation,[2] of inter vivos trusts. On the other hand, it has been affirmed and reaffirmed that the probate court lacks jurisdiction in matters involving trusts and trustees. State ex rel. North St. Louis Trust Co. v. Wolfe, supra; State ex rel. and to Use of Clay County State Bank v. Waltner, supra; Hedrick v. Wright, 239 Mo.App. 488, 191 S.W.2d 372; Bond v. Unsell, Mo.App., 72 S.W.2d 871; Hess v. Sandner, 198 Mo.App. 636, 198 S.W. 1125; In re Schield's Estate,

---

1. State ex rel. and to Use of Clay County State Bank v. Waltner, supra, and cases cited, 145 S.W.2d loc. cit. 155; 90 C.J.S. Trusts § 454, p. 871; § 454(3), p. 875.

2. Tracy v. Sluggett, 360 Mo. 1120, 232 S.W.2d 926; Therrien v. Mercantile-Commerce Bank & Trust Co., 360 Mo. 149, 227 S.W.2d 708; Lipic v. Wheeler, 362 Mo. 499, 242 S.W.2d 43; St. Louis Union Trust Co. v. Dudley, Mo.App., 162 S.W.2d 290; Creek v. Union Nat. Bank in Kansas City, Mo.Sup., 266 S.W.2d 737; 3 Scott on Trusts, § 330.8.

Mo.Sup., 250 S.W.2d 151; Howard's Estate v. Howe, 344 Mo. 1245, 131 S.W.2d 517; Butler v. Lawson, 72 Mo. 227;. Dietrich v. Jones, 227 Mo.App. 365, 53 S.W.2d 1059, and cases cited, loc. cit. 1062; In re Franz' Estate, 359 Mo. 362, 221 S.W.2d 739. These decisions hold that the probate court has no power to establish, declare, enforce and execute trusts ·or supervise trustees.

■■ The ultimate issue framed by the interrogatories and answers is whether the assets in question constitute trust property the title, possession and control of which is properly vested in the trustees under an existing, continuing, active express inter vivos trust, or whether the assets constitute property of the decedent the delivery of which to the administrator should be compelled because wrongfully withheld on the theory that the 1951 trust was revoked and is no longer in existence. While the administrator does not pray for the cancellation, revocation or setting aside of the trust, his objective is to compel the trustees to deliver and yield up the trust assets upon the basis of a probate court finding and adjudication that the trust was previously revoked by the act of the settlor. And while the trustees do not pray for an order establishing the trust, their aim is to secure a judicial confirmation of the integrity and continued existence of the trust. The powers of the probate court are thus invoked to investigate and adjudicate the question whether the assets in question, which admittedly constituted a trust res in 1951, are still affected with a trust under the trust indenture, by operation of law or act of the parties, or whether the title and estate of the trustees in the trust assets were terminated and vested in decedent or her administrator. Incidental factual questions bearing upon that ultimate issue include the following: whether settlor revoked the trust indenture, pursuant to article 10 of the trust indenture; whether the trustees waived their right to insist upon revocation in that manner; whether the

trust was invalidated, revoked or set aside by any other method or means; and if revoked, whether the trust thereafter was revived and reinstated. The ultimate issue and all these subordinate and incidental issues are strictly equitable in nature. They involve either the protection and preservation of a trust by a judicial declaration reestablishing, confirming and validating the trust, or the termination and destruction of a fiduciary relationship in the field of inter vivos trusts, by a judicial recognition of the previous invalidation, revocation and setting aside of a trust indenture. This is the province and domain of equity. This is outside the jurisdiction of the probate court.

If the probate court, proceeding beyond its proper jurisdiction, should find the principal issue for the administrator and declare the property the proper subject of transfer because no longer affected by a trust, that court would be confronted with numerous matters wholly beyond its jurisdiction: the removal of the trustees and all questions relating to the liability of the trustees for breach of trust, depreciation of the property, etc.; the tracing of trust assets; the winding up of the trust; the trustees' accounting for receipts and disbursements; the distribution of the assets to the proper person; and the discharge of the former trustees. All such procedures are of exclusive concern to a court of equity. The taking of the accounting would be a complicated affair, involving extensive transactions over a period of years—sales, purchases and transfers of stocks, bonds and securities; the use, investment and reinvestment of cash; receipts of interest, dividends and other income; additions to and withdrawals from principal, by settlor and by her nominees; disbursements for brokers' and trustees' commissions, attorneys' and auditors' fees and other expenses of administration, payments of net income to various beneficiaries, etc. The probate court has no· jurisdiction to settle the accounts of a trustee in the management and

control of the corpus of an inter vivos trust. In re Franz' Estate, supra; Johnston v. Grice, 272 Mo. 423, 199 S.W. 409. In the Franz case this Court said, 221 S.W.2d loc. cit. 741, "A court of equity and not the probate court is the proper forum in which to settle this controversy:" In the Grice case this Court said, 199 S.W. loc.cit. 410, "* * * [T]he execution of trusts and supervision of trustees constitute a peculiar branch of equity jurisprudence and the circuit courts of this state are clothed by statute with large jurisdiction in the matter of their appointment, removal and supervision." Chapter 456, RSMo 1959, and V.A. M.S. The probate court has no jurisdiction over the tracing of trust funds. Howard's Estate v. Howe, supra. The following language in Lemp Brewing Co. v. Steckman, 180 Mo.App. 320, 168 S.W. 226, 228 is appropriate: "* * * [I]f the claim made is of purely equitable cognizance, the summary statutory remedy in the probate court would not be available, since that court could not try such questions, for they are matters which would frequently involve the most difficult, intricate, and abstruse questions and require all the powers and machinery of a court of equity to adjust and settle upon an equitable basis."

Appellant makes the seemingly plausible argument that the probate court is competent to decide the "simple fact question" whether the trust was revoked in 1952; that if the trust was revoked the trustees "were under an immediate and unconditional duty to transfer the assets comprising the trust back to the decedent, or after her death to the decedent's estate, and that an action at law could be maintained for breach of that duty." In Kerwin v. Kerwin, Mo.App., 204 S.W. 922, the fact question was whether there was a bona fide gift causa mortis from father to son. In State Bank of Willow Springs v. Lillibridge, 316 Mo. 968, 293 S.W. 116, the fact question was whether there was a transfer and surrender of a note marked "paid." In both cases it was contended that the probate court could decide the question in a discovery of assets proceeding. In both cases it was decided that only equity had jurisdiction, because equitable issues were necessarily involved (whether the transactions were in fraud of plaintiff's rights). Likewise, in the instant case, in addition to the fact that the determination of a controversy with respect to the validity of an express inter vivos trust is a matter within the exclusive control of equity, considerably more than a simple fact question is involved. The problem presented is not as simple or easily solved as appellant indicates. The duty to transfer the assets would arise only if the trust were fully executed, had ceased to exist and was closed, and the amount of money due and, the list of securities to be transferred were settled and agreed upon, either by the striking of a balance by agreement or by an accounting in a court, so that nothing remained for the trustees to do but pay over the money and deliver the securities. See Howard's Estate v. Howe, supra, 131 S.W. 2d loc. cit. 520; Zeideman v. Molasky, 118 Mo.App. 106, 94 S.W. 754; Wittich v. Wittich, Mo.App., 263 S.W. 1001; Neary v. City Bank Farmers Trust Co., 260 App. Div. 791, 24 N.Y.S.2d 264, 268 [8]. The trust, involving a complicated series of transactions extending over a period of many years, is still being actively managed and administered. The parties are in diametric opposition on the issue of revocation or not. There has been no accounting, agreement, or striking of a balance, and there can be no accounting in court until a court of equity assumes jurisdiction and acts. It is not a "simple fact question," but a series of questions, all of which should be disposed of in one court in order to avoid a multiplicity of actions; questions of purely equitable cognizance, calling for the exercise of the powers and procedures of an equity court, and beyond the power of the probate court in a proceeding under § 473.-340.

Appellant relies heavily upon Lolordo v. Lacy, 337 Mo. 1097, 88 S.W.2d 353, in his

**230**

contention that the probate court has jurisdiction. That case is not controlling for at least three reasons. (1) The point that the court erred in refusing to transfer the case to an equity division was not properly preserved for review, and therefore was not passed upon. (2) The trust was completely terminated. (3) The trustee, upon receipt of the trust funds, was under an immediate duty to turn them over to the administrator of the estate to which they belonged.

■ Appellant makes the further contention that the pleadings disclose a proper situation for a discovery of assets proceeding and the motion to dismiss should not have been sustained because it was admitted by the trustees that the trust had been revoked, and that when a trust is revoked there is an immediate and unconditional duty to transfer the trust assets to the person entitled to them, who may, in the form of this discovery proceeding, maintain an action at law for breach of this duty. Appellant says the trustees admitted the revocation because on a motion to dismiss the well pleaded facts are taken as true. This contention fails. On a motion to dismiss for lack of jurisdiction over the subject matter, the truth of the allegations are not in issue. The question is not whether a claim for relief is sufficiently stated, but whether the court has authority to determine the existence or nonexistence of the facts alleged. Assuming the fact of revocation, there was no immediate and unconditional duty in this case to transfer the assets, for the reasons stated.

The judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.

